SLIP OPINION

2014 Ark. App. 513

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-13-1159

| | |
|---|---|
| IN RE ADOPTION OF I.C. | Opinion Delivered  October 1, 2014 |
| KEVIN SCOTT CLARK AND JUNIORETTE MARIE CLARK<br><div align="right">APPELLANTS</div> | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. PR-2013-300-3] |
| V. | HONORABLE TOM SMITH, JUDGE |
| MADISON ELAINE HALL<br><div align="right">APPELLEE</div> | AFFIRMED |

## BRANDON J. HARRISON, Judge

Juniorette and Kevin Clark appeal the circuit court's denial of their petition for adoption. They argue that the court erred in (1) allowing the birth mother, Madison Hall, to withdraw her relinquishment of her parental rights outside the five days allowed by statute, and (2) not approving Hall's relinquishment under Ark. Code Ann. § 9-9-220(b) (Repl. 2009). We cannot address the arguments on appeal, and affirm the court's denial, because the Clarks did not also appeal the court's decision that it was not in the child's best interest to be adopted.

On 5 June 2013, the Clarks filed a petition for adoption in the Benton County Circuit Court. The petition explained that the child to be adopted was born on June 1 and that the mother of the child, Hall, had signed a relinquishment of her parental rights and consent to adoption, which was attached to the petition. In this document, Hall relinquished all rights and obligations to her child, consented to adoption by the Clarks and stated that adoption was in her child's best interest, waived her right to revoke the

relinquishment within ten days after the child's birth, and acknowledged that she had five days after the birth of the baby to revoke her relinquishment by filing a notarized affidavit of withdrawal with the Benton County Clerk. Hall signed this document on 10 January 2013.

On 6 June 2013, the Clarks filed a motion to gain custody of the child or, in the alternative, to require Hall to appear in court with the child. The motion explained that Hall had failed to communicate with the Clarks and had taken the child from the hospital. The Clarks expressed concern for the child's safety and questioned Hall's stability and parenting skills. The court ordered Hall to appear with the child on 11 June 2013. On that date, Hall appeared and informed the court that she was withdrawing her consent to the adoption. The Clarks' counsel argued that Hall's attempted withdrawal was outside the five-day period allowed by statute and requested a formal adoption hearing so that proof could be offered on whether Hall's relinquishment was valid.

After another preliminary hearing and trial briefs filed by the parties, the court held a final hearing on 16 August 2013. Hall testified that at the end of 2012, when she was approximately four months pregnant, her friend Mariah introduced her to Tabitha Easley, who could help her find someone to adopt the baby. Hall felt that adoption was the best option because she was homeless and did not have any support or help to care for the baby. Along with providing food and transportation, Easley located several families interested in adopting the baby, and from those families, Hall chose the Clarks. On 10 January 2013, Hall met with the Clarks, reviewed the relinquishment-and-adoption agreement, and signed the agreement in the presence of a notary.

Hall acknowledged during the hearing that she understood when she signed the form that she had until five days after the birth to change her mind.  About three or four months before the baby was born, however, Hall began to have doubts about the adoption.  She did not communicate those doubts to Easley or to the Clarks, but she did speak to family and friends about it.  After the baby was born, Hall told several nurses that she had changed her mind about the adoption.  She claimed to have spoken to approximately fifteen attorneys in the five days after the baby was born "to see how I'm supposed to do it. I didn't know how I was supposed to."  She said that she had never filed any revocation with the probate clerk and was not given a copy of the consent that she signed in January.

Tabitha Easley, who connected Hall with the Clarks, testified that she does not work for any adoption agency or group but "just help[s] people in the community that have a heart for adoption."  Easley stated that Hall and the Clarks met at her home on January 10 and that she (Easley) explained the consent form and specifically the five-day waiver to Hall.  According to Easley, Hall did not question the consent form.

Easley stated that she continued to communicate with Hall for the next several months, mostly through text messaging, but that Hall stopped communicating on April 20.  On that date, Hall was admitted to the hospital and her friend Mariah told Easley that Hall was in labor.  Easley then informed the Clarks and they were headed to the hospital when Hall sent Easley a text message that it was just food poisoning, that she was not in labor, and that she did not want the Clarks there until she was in labor.  After that date, Hall did not respond.  Easley speculated that Hall cut off contact because "the Clarks

showed up at the hospital, and we were informed that it was because of drug use, that [Hall] was fearful of being in trouble for drugs."

Juniorette Clark testified that she knew Easley because they had gone to church together for several years and that Easley knew that the Clarks were interested in adopting a child. Among other things, she said that on January 10 she asked Hall if she was sure about her decision and if she understood what to do if she changed her mind, and Hall said, "Yes, but I'm not going to." According to Juniorette, Hall signed two copies of the consent agreement, and she and the Clarks each received a copy. Kevin Clark also testified that Hall signed two copies and received one.

At the hearing's conclusion, the court denied the petition for adoption. It found that, under Ark. Code Ann. § 9-9-220, the relinquishment of parental rights was subject to court approval and that it did not approve because (1) Hall did not receive a copy of the consent agreement, and "without a copy . . . being given to the mother, you can't make informed consent and waiver," and (2) the Clarks were put on notice as of April 20 that Hall had possibly changed her mind. The court found that no external duress or intimidation from the Clarks occurred, but that

> the circumstances of an unwed mother who's being kicked out of her house, is homeless, is foodless, is having everybody telling her this is the right thing to do, and then when you combine that with the fact that after we signed the document, without any attorney, or legal consent done to understand what it means what we're signing. I do find that there is some duress and intimidation factors that existed that we got that far, would set this aside.

The court also concluded that it was not in the child's best interest to allow the adoption "at this time" given that the child had been with her mother for three months. A written order memorializing these findings was entered, which the Clarks appealed.

This court recently explained the standard of review for adoption proceedings:

> In adoption proceedings, we review the record de novo, but we will not reverse the lower court's decision unless it is clearly erroneous or against a preponderance of the evidence, after giving due regard to its superior opportunity to determine the credibility of the witnesses. We have said that in cases involving minor children a heavier burden is cast upon the court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interest; that the appellate court has no such opportunity; and that we know of no case in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as one involving minor children. . . . Adoption proceedings are in derogation of the natural rights of parents, and statutes permitting such are to be construed in a light favoring continuation of the rights of natural parents.

*Ducharme v. Gregory*, 2014 Ark. App. 268, at 6, 435 S.W.3d 14, 18 (citations omitted).

Arkansas Code Annotated section 9-9-220 (Repl. 2009) provides in part:

> (a) With the exception of the duty to pay child support, the rights of a parent with reference to a child, including parental right to control the child or to withhold consent to an adoption, may be relinquished and the relationship of parent and child terminated in or prior to an adoption proceeding as provided in this section.
> . . . .
> (b) All rights of a parent with reference to a child, including the right to receive notice of a hearing on a petition for adoption, may be relinquished and the relationship of parent and child terminated by a writing, signed by an adult parent, subject to the court's approval. . . . The signing shall occur in the presence of a representative of an agency taking custody of the child, or in the presence of a notary public, whether the agency is within or without the state, or in the presence and with the approval of a judge of a court of record of this state or any other state in which the minor was present at the time it was signed. The relinquishment shall be executed in the same manner as for a consent to adopt under § 9-9-208.

(1)(A) The relinquishment may be withdrawn within ten (10) calendar days, or, if a waiver of the ten-day period is elected under § 9-9-220(b)(3), five (5) calendar days after it is signed or the child is born, whichever is later.

(i) Notice of withdrawal shall be given by filing an affidavit with the probate division clerk of the circuit court in the county designated by the writing as the county in which the guardianship petition will be filed if there is a guardianship, or where the petition for adoption will be filed, if there is no guardianship. If the ten-day period, or, if a waiver of the ten-day period is elected under subdivision (b)(3) of this section, the five-day period ends on a weekend or legal holiday, the person may file the affidavit the next working day.

The Clarks argue here that the circuit court clearly erred in allowing the revocation beyond the five-day period allowed by statute because Hall never filed an affidavit with the Benton County Probate Clerk within the five-day time frame (or thereafter), which means that her revocation was invalid under the plain language of the statute. In the Clarks' view, the circuit court had no discretion to reject the withdrawal of relinquishment given that Hall undisputedly signed it and understood it. The Clarks also argue that the court's decision was clearly erroneous because Ark. Code Ann. § 9-9-220 does not require that a copy of the relinquishment of rights be given to the birth mother, and the "internal duress" the court found cannot support an untimely withdrawal.

We cannot decide the merits of what appears to be a novel case because the Clarks failed to challenge the court's finding that the adoption was not in the child's best interest. Even if a biological parent has validly consented to the adoption of a child, the circuit court may still deny the adoption petition if it finds that the adoption is not in the child's best interest. *See In re Adoption of J.P.*, 2011 Ark. 535, 385 S.W.3d 266 (affirming the denial of a stepmother's adoption of her stepson despite biological father's consent based

on the circuit court's best-interest determination). So even if we expressed a concern about the circuit court's decision to reject the relinquishment for the reasons stated, we still have an unchallenged basis for affirming the denial of the adoption petition.

We acknowledge that the Clarks' reply brief states, in a heading and without further development, that the "trial court erred in its determination that maintaining the natural relation between appellee and her child was in the best interest of the child." Even if we could grant that the quoted sentence was an argument, it came too late. *See Kassees v. Satterfield*, 2009 Ark. 91, 303 S.W.3d 42 (noting that appellate courts will not consider an argument raised for the first time in the reply brief). What is clear to us is that the principal brief was solely about the revocation/withdrawal issue, which means the separate and independent best-interest finding was not timely discussed and challenged.

Affirmed.

WYNNE and GLOVER, JJ., agree.

*H. Keith Morrison*, for appellants.

*Tina Adcock-Thomas*, for appellee.